NEW ENGLAND DREDGING COMPANY vs. ROCKPORT
GRANITE COMPANY & another.

Suffolk.   March 28, 1889. — June 19, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Contract under Seal — "Ratification" — Partnership — Surplusage
— Undisclosed Principal.*

Contracts under seal between two, for the doing of certain work by one to be paid
for by the other, were *held* not to be enforceable after the work was done as
against others not parties to the instruments, either as parties by a ratification
on their behalf, or as partners in the enterprise.

BILL IN EQUITY, filed July 3, by the plaintiff, to charge the
Rockport Granite Company and the Cape Ann Granite Com-
pany, as partners with or equitable sureties of Clapp and Bal-
lou, upon contracts under seal ·between the two last and the
plaintiff.

The defendants demurred to the bill, on the ground that the
plaintiff had a plain, complete, and adequate remedy at law, for
want of equity, because of laches, for misjoinder of parties de-
fendant, and for multifariousness.

*W. Allen*, J., sustained the demurrer, and reserved the case
for the consideration of the full court.   The material facts ap-
pear in the opinion.

*J. C. Coombs & E. P. Payson*, for the plaintiff.

*J. O. Teele*, for the defendants.

HOLMES, J.   This case comes before us upon demurrer to a
bill brought to charge the defendants upon two instruments
under seal, called contracts B and E, by which the plaintiff
covenanted to do certain dredging and filling, which it has done,
and the other parties to the instruments agreed to pay for the
work, which agreement has been but partially fulfilled.   Con-
tract B was a subcontract for part of the work called for by a
contract under seal, made by the Rockport Granite Company
and Clapp and Ballou with the Commonwealth, on September
29, 1873, to build sea walls and to do some filling upon South
Boston flats.   This is called contract A.   Contract E bears a
similar relation to a simple contract called D, made by Clapp

and Ballou with the Boston and Albany Railroad Company, on September 21, 1874, to do similar work to that under A, upon adjoining territory.

On February 7, 1874, the Cape Ann Granite Company agreed under seal, by a contract called C, with the Rockport Granite Company and Clapp and Ballou, that it should have one third interest in the contract A with the Commonwealth, and in the contract B with the plaintiff, and " as between the parties " to C should have the same rights and liabilities as if it had joined in A and B. We will take it that both the defendant companies had an interest also in D and E when made. On October 24, 1874, these companies sold out their interest to Clapp and Ballou, and took a bond of indemnity. The plaintiff did not know of the interest of the Cape Ann Granite Company until after the latter had sold out. It is alleged that the effect of the several contracts mentioned, which are all set forth, was that the defendants were " partners or quasi partners of Clapp & Ballou, and are now subject to the liabilities accordingly upon contracts B and E herein sought to be enforced."

· The first of the contracts sued upon, B, purports to be made between " the Rockport Granite Company, . . . George Clapp and Frederick K. Ballou, both of Boston, . . . partners under the firm and style of Clapp & Ballou," parties of the first part, and the plaintiff. This contract was made on September 29, 1873, before the Cape Ann Granite Company had acquired any interest in the subject matter, and, apart from the more general difficulty arising from its being under seal, to which we shall advert in dealing with E, there is no ground of either form or substance for the suggestion that the Cape Ann Granite Company was a party to it. Clearly it was not a party to it when made, and if when made the contract was not made on behalf of the Cape Ann Company, like the contracts in *Cady* v. *Shepherd*, 11 Pick. 400, *Holbrook* v. *Chamberlain*, 116 Mass. 155, *Ahrend* v. *Odiorne*, 125 Mass. 50, &c., that company could not become a party to it by ratification. The meaning of ratification is, and always has been, the adoption of an act purporting to be done, or, at least, done in fact, on behalf of the ratifier. Y. B. 30 Ed. I. 128; 7 Hen. IV. 34, 35, pl. 1. Godbolt, 109, pl. 129. *Wilson* v. *Tumman*, 6 Man. & G. 236. In order to bind

the Cape Ann Company a new and substituted contract would be necessary, and no such contract is alleged.

Some reliance was placed on contract C, by which the Cape Ann Company afterwards became interested in B and A. But the undertaking there is expressly limited to liability as between the parties to the instrument, and does not purport to be for the benefit of the plaintiff. Such a contract confers no rights upon strangers who may happen to benefit by its performance. *Montague* v. *Smith*, 13 Mass. 396, 405. *Exchange Bank* v. *Rice*, 107 Mass. 37. *Prentice* v. *Brimhall*, 123 Mass. 291. *Flynn* v. *North American Ins. Co.* 115 Mass. 449. No doubt the covenantee, either within the instrument or without it, may declare a trust in favor of a third person. *Bailey* v. *New England Ins. Co.* 114 Mass. 177. *Lloyd's* v. *Harper*, 16 Ch. D. 290. But there is nothing of that sort here. See *National Bank* v. *Grand Lodge*, 98 U. S. 123.

The second of the contracts sued upon, E, was made on September 21, 1874. It purports to be made "between George Clapp and Frederick K. Ballou, both of Boston, in the county of Suffolk and Commonwealth of Massachusetts, party of the first part, and the New England Dredging Company." Like B, it is under seal. Therefore no one can be sued upon it as a covenant, except a party to the instrument. *Huntington* v. *Knox*, 7 Cush. 371, 374. *M'Ardle* v. *Irish Iodine & Marine Salts Manuf. Co.* 15 Ir. C. L. 146, 153. *Ward* v. *Motter*, 2 Rob. (Va.) 536, 562. *Childs* v. *Shoemaker*, 1 Wash. C. C. 494, 496.

It was suggested that we might read Clapp and Ballou as a partnership name embracing the defendants, assuming that a partnership is disclosed by the bill. But if it would be permissible to show that a single name, seemingly that of an individual, was in truth also a partnership name, and that it was used as such in a deed, (*Butterfield* v. *Hemsley*, 12 Gray, 226,) in this case there are two names used, not in conjunction, but separately and at length. The contract purports to describe two men and no more, as plainly as if it had said so in terms. There is no pretence that the defendants did business under the name of Clapp and Ballou in any form or on any occasion, unless on this one, and the document excludes their having done so here. When that is the case, the contract cannot be contra-

dicted. See *Finney* v. *Bedford Ins. Co.* 8 Met. 348; *Humble* v. *Hunter*, 12 Q. B. 310; *Schmaltz* v. *Avery*, 16 Q. B. 655, 660; *Sprigg* v. *Bank of Mount Pleasant*, 14 Pet. 201.

For the same reason, the contract could not have become binding on the defendants by ratification, because an instrument under seal cannot be ratified except by those whom it purports to bind.

It was not argued that the seal could be treated as surplusage. The bill attempts to enforce the contracts as instruments under seal. Assuming that, if it clearly appeared from the face of the document that the contract was intended to bind one who by the technical rules applied to sealed instruments was not bound, the seal, if unnecessary, might be disregarded in some cases, (*Cook* v. *Gray*, 133 Mass. 106, 111,) still, when the instrument discloses no such intent, is complete on its face, and is framed throughout as a deed only intended to bind those whom it purports to bind, it would overthrow the distinction between specialty and parol if the seal could be rejected in order to charge an undisclosed principal upon any fact alleged in this bill. *Briggs* v. *Partridge*, 64 N. Y. 357. *Moore* v. *Granby Mining & Smelting Co.* 80 Mo. 86. See *Dillon* v. *Brown*, 11 Gray, 179, *Russell* v. *Annable*, 109 Mass. 72.

The fact, if it was one, that the defendants were or became equitably interested in the contract, did not make them liable, because it did not make them parties to it. The contract remained a common law contract, and nothing more. The defendants got no rights in their own persons against the plaintiff, but simply the right to compel Clapp and Ballou to exercise their rights for the defendants' benefit. Even if, as matter of procedure, the defendants were allowed to sue in their own name, they would only be exercising the right of Clapp and Ballou. For the same reason the defendants were not bound to the plaintiff. See *Walters* v. *Northern Coal Mining Co.* 5 DeG., M. & G. 629, 640 *et seq.*; *Cox* v. *Bishop*, 8 DeG., M. & G. 815; Master of the Rolls in *Clavering* v. *Westley*, 3 P. Wms. 402; *Borcherling* v. *Katz*, 10 Stew. 150.

We have dealt with as much of the plaintiff's argument as we deem necessary in order to dispose of the case. We shall not discuss other questions which would have to be considered before the bill could be sustained.     *Demurrer sustained.*