EXCHANGE REALTY COMPANY & another *vs.* SOLOMON
BINES & another.

Suffolk.   November 10, 1938. — January 3, 1939.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Contract*, What constitutes, Escrow agreement, Consideration, Perform-
ance and breach, Rescission, Parties, Under seal. *Equity Jurisdiction*,
Rescission, Specific performance, Plaintiff's clean hands. *Fraud.*
*Equity Pleading and Practice*, Judicial discretion.

After the one named as seller in a written contract for the sale of real
estate had refused to sign it until he had made a settlement with his
broker, an oral agreement then made between the parties, that the
contract should be signed in duplicate and held as an escrow until the
custodian should receive notice from the seller that he had made
such settlement, when it should be delivered by the custodian, was a
bilateral, binding agreement based on consideration, under which the
written contract became effective upon the custodian's receipt of such
notice despite the purchaser's attempted withdrawal from it before
the notice was received.

If the delivery of a document as an escrow was merely an offer to a uni-
lateral contract, the contract was completed when the offeree com-
plied with the condition of the escrow notwithstanding a notice of
withdrawal previously given by the offeror to an employee of the
custodian of the escrow who had no authority to receive it in his
behalf.

A correct statement by a seller to the purchaser of real estate as to the
rent reserved in a lease of the property was not rendered a misrepre-
sentation entitling the purchaser to rescind the contract of sale by
the fact, undisclosed by the seller, that the lessee was actually pay-
ing less than the reserved rent under a "concession" by the seller
not amounting to a modification of the lessee's legal liability respect-
ing rent.

One who was the real party in interest in a purchase of real estate and
made a deposit against the purchase price, but, to the knowledge of
the seller, declined to sign a contract of purchase in order to avoid
personal liability, could not be treated as a party to a sealed contract
thereupon signed by the seller and by a straw purchaser; nor could
such real party in interest, in a suit for specific performance by the
seller against him and the straw, be compelled to provide the straw
with the funds necessary to enable the straw to perform the contract.

Lack of "entire frankness," not amounting to fraud, by a proposed
seller of real estate toward the purchaser was not a ground for this
court's revising the trial judge's exercise of discretion in granting the
seller relief by specific performance of the contract of sale.

BILL IN EQUITY, filed in the Superior Court on September 10, 1937.

The suit was heard by *J. W. Morton*, J.

*H. N. Hartstone*, (*W. Hartstone* with him,) for the plaintiffs.

*H. H. Davis*, for the defendant Bines.

RONAN, J. This is a bill in equity brought by the Exchange Realty Company and Sher to rescind on the ground of fraud, a contract, entered into by the company with the defendant Bines for the purchase and sale of real estate, in Stoneham, and for an order requiring the defendant Hartstone to return to Sher a check which the latter had entrusted to him. The defendant Bines denied any fraud and sought specific performance of the contract and an assessment of damages against Sher.

The case was heard in the Superior Court. The judge found that the contract was in full force and effect; that the plaintiffs were not entitled to a rescission of the contract; that Bines was entitled to specific performance; and that Sher should pay the amount of the check and also should pay sufficient money to enable the company to purchase the property. A final decree was entered in accordance with these findings, and appeals therefrom by both plaintiffs bring the case here.

The evidence is reported. It is the duty of this court to consider all the evidence and to reach its own conclusions, giving appropriate weight to the findings upon oral evidence made by the trial judge, which are not to be reversed unless plainly wrong. *Johnson* v. *O'Lalor*, 279 Mass. 10. *Markiewicus* v. *Methuen*, 300 Mass. 560.

The negotiations for the purchase of the property were conducted entirely by Sher and Bines and all details of the transaction were agreed upon between them. Sher was unwilling to become a party to any written contract and it was finally arranged that a corporation, which was at times used by Sher's attorney as a straw or nominal party, should act in that capacity. Bines refused to sign the contract until he had settled with his brokers the amount of commission he was to pay. The parties then agreed that the

contract should be executed in duplicate and held by Hartstone, together with a check made by Sher and payable to Bines for $1,000, which was the amount to be paid upon the execution of the contract; and that, when Hartstone was notified within a certain time that Bines had settled the amount of the commission, he was to deliver one of the duplicates and the check to Bines and was to deliver the other duplicate to Sher; otherwise the written contract was to be cancelled and the check was to be returned to Sher. It was in these circumstances that the contract was executed, together with the check, and delivered to Hartstone. On the next day, a Friday, Bines telephoned Hartstone at his summer residence that the commission had been settled, and he requested the check and the written contract. Hartstone promised to deliver them to him when he arrived at his Boston office on Saturday morning. But Sher, on Friday morning, notified Hartstone's secretary that the income had been misrepresented and to inform Hartstone not to deliver any papers to Bines. When Bines met Hartstone on Saturday morning to get the contract and check, he was informed of Sher's contention and Hartstone declined to deliver any papers to Bines. Hartstone still holds these written instruments.

The plaintiffs contend that no binding agreement was made because, while Hartstone was holding the papers and before Bines had notified him that the matter of commission had been settled and the delivery of the papers was in order, Sher had informed Hartstone's secretary that he would not perform the contract because the rentals were not as represented by Bines. The written instruments were delivered and held by Hartstone pending the performance of the condition by Bines, and, although Hartstone was Sher's attorney, he was not holding the papers as such, *Elastic Tip Co.* v. *Graham*, 185 Mass. 597, but was holding them as a custodian, *Hubby* v. *Hubby*, 5 Cush. 516, strictly in accordance with the agreement of the parties, none of whom reserved any power of revocation. *Fairbanks* v. *Metcalf*, 8 Mass. 230. *Wilson* v. *Jones*, 280 Mass. 488, 493.

While the contract did not become operative until Bines settled with his brokers and so notified Hartstone, *Robertson* v. *Rowell*, 158 Mass. 94; *Levene* v. *Crowell*, 243 Mass. 441; *Liberty Trust Co.* v. *Price*, 259 Mass. 596; Am. Law Inst. Restatement: Contracts, § 101, yet, pending the receipt of such notice, neither of the parties had a right to withdraw, as the oral agreement was based upon sufficient consideration and determined the manner in which the papers were to be delivered. *Kenyon* v. *Suburban Realty Corp.* 244 Mass. 571, 577. *Spring* v. *Leahy*, 254 Mass. 614. *Zimetbaum* v. *Berenson*, 267 Mass. 250. Am. Law Inst. Restatement: Contracts, § 103. The contention of the plaintiffs that, until the time for delivery of the instruments had arrived, their conduct amounted only to a revocable offer, is untenable. The plaintiffs' position would be sound if the evidence showed that they had entered into a unilateral agreement with Bines concerning the delivery of the papers, *Lincoln* v. *Gay*, 164 Mass. 537; *Des Rivieres* v. *Sullivan*, 247 Mass. 443; *Elliott* v. *Kazajian*, 255 Mass. 459, but upon the evidence it is plain that the parties had entered into a bilateral agreement which, upon the performance by Bines, brought into full force and effect the written contract of purchase and sale. *Lennox* v. *Murphy*, 171 Mass. 370. *Lascelles* v. *Clark*, 204 Mass. 362. *Heller* v. *Pope*, 250 N. Y. 132. Williston, Contracts (Rev. ed.) § 47. There is nothing in the cases relied upon by the plaintiffs to show that there was no consideration for the oral agreement in accordance with which the papers were held by Hartstone. It could be found to have been based upon the promise made by the plaintiffs to Bines in consideration of which he then signed the written contract rather than leave it unsigned until after he had seen his brokers relative to their commission. The oral agreement was ancillary to and closely connected with the written contract. There is nothing in the contention that Bines could avoid the written contract by refusing to settle with the brokers. He adjusted the commission within a few hours after he executed the contract. In the next place, he was bound to exercise good faith in making reasonable

efforts to come to an agreement with his brokers. *Blanchard* v. *Blackstone,* 102 Mass. 343. *Eastern Massachusetts Street Railway* v. *Union Street Railway,* 269 Mass. 329.

Even if all that the plaintiffs had done in prescribing the terms and conditions under which the papers were to be delivered by Hartstone merely amounted to an offer, yet the judge found that Hartstone had received notice from Bines that the condition under which the papers were held had been performed before he learned from his secretary that Sher did not intend full performance of the contract. Notice earlier on the same day by Sher to Hartstone's secretary was ineffectual, because the judge found that she was not authorized to receive it in behalf of Hartstone. Her knowledge could not be imputed to Hartstone, and he could not be held to have had constructive knowledge of Sher's contention when he promised to deliver the written contract and check to Bines. *Stetson Press, Inc.* v. *Bunsen Oil Burner Corp.* 285 Mass. 291. *Wurm* v. *Allen Cadillac Co.* 301 Mass. 413. The judge was right in finding lack of authority in the secretary to accept Sher's notice in behalf of Hartstone. *Record* v. *Littlefield,* 218 Mass. 483. *Industrial Bankers of Massachusetts, Inc.* v. *Reid, Murdoch & Co.* 297 Mass. 119, 124.

The plaintiffs next contend that the written contract should be rescinded on the ground that Bines made material misrepresentations concerning the income. The amount of rentals may be a material inducement in purchasing property and, if found to be falsely stated, an action at law for damages will lie, *Mignault* v. *Goldman,* 234 Mass. 205; *Forman* v. *Hamilburg,* 300 Mass. 138, or a suit in equity for rescission of the contract may be maintained. *Stevens* v. *Mulcahy,* 261 Mass. 116. *Rudnick* v. *Rudnick,* 281 Mass. 205.

The judge found that the amount of rent paid by a tenant at will and the rate set forth in the leases were as stated by Bines and as set forth in a written statement furnished by him; that one of the lessees, the Duncan Hardware Company, had sublet and, due to a concession made to it by a prior owner, was paying less than the amount stipu-

lated in the lease; that no effective modification of the lease had been made, and the lessee was liable and obliged to pay the rate prescribed therein; that Bines, who had owned the property for about a month before he began negotiations with Sher for its sale, knew that such a concession had been made to the lessee; and that, "Although concealing the fact of the concession made to the Duncan Company, Bines made no statement orally, or in writing, with regard thereto." The judge found and ruled "that there was not such misrepresentation as to warrant cancellation of the agreement." The burden of showing that the contract was voidable on the ground of fraud was upon the plaintiffs. Both Sher and Bines were experienced real estate dealers, and even though one of the lessees was paying less rental than shown by the lease, the lease had not been abrogated and the lessee, who was shown to be able to pay the prescribed rental, had not been released from doing so, and no harm could be shown to have resulted to Sher. In other words, the concealment by Bines of the concession made to the Duncan Company did not constitute a representation of such materiality as would warrant a rescission of the contract. *Runkle* v. *Burrage,* 202 Mass. 89. *Zintz* v. *Golub,* 260 Mass. 178. *Vye* v. *McKenney,* 266 Mass. 573. *Province Securities Corp.* v. *Maryland Casualty Co.* 269 Mass. 75.

Sher was not a party to the written contract between the company and Bines, which was under seal. Bines knew that Sher, in order to avoid personal liability, would not sign any contract; and he, in order to sell his property, entered into a contract with the company alone, which all the parties knew was a straw. The rights of the parties are to be determined by the contract, although the judge found that Sher was the real party in interest. He was not an undisclosed principal. Even if the company was acting in his behalf, the contract was not in his name and a court of equity has no jurisdiction to add his name to the contract or to substitute it for that of the company. *Freeman* v. *Fishman,* 245 Mass. 222, 226. *Mansfield* v. *Lang,* 293 Mass. 386. The parties to a sealed instrument are the

only ones that can enforce its provisions or maintain an action for its breach. *Seretto* v. *Schell,* 247 Mass. 173. *Cavanaugh Bros. Horse Co.* v. *Gaston,* 255 Mass. 587. There can be no recovery on a contract under seal against a person not a party to it. *Huntington* v. *Knox,* 7 Cush. 371. *Congress Construction Co.* v. *Worcester Brewing Co.* 182 Mass. 355. Nor can the seal be regarded as surplusage even if the validity of the contract did not necessitate a seal, because the contract itself does not manifest an intention that any others were to be obligated by its provisions, and the reported evidence clearly shows that this method of transaction of the business was intentionally adopted in order that no one not a party should be bound. *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381. *Seretto* v. *Schell,* 247 Mass. 173.

Bines, however, contends that, on account of the relation of Sher to the company, Sher should be required to furnish it with funds sufficient to enable it to complete the purchase as it had agreed, and that the company should be ordered specifically to perform its contract. Bines contends that, upon the purchase of the property in the name of the company with the funds of Sher, a resulting trust will arise in favor of Sher. But no property has been conveyed and there is nothing upon which a trust may be imposed. A resulting trust can arise only at the time property is conveyed. *Pollock* v. *Pollock,* 223 Mass. 382. *Quinn* v. *Quinn,* 260 Mass. 494, 503. *Moat* v. *Moat,* 301 Mass. 469. The company on this record cannot compel Sher to purchase the property. There was no written agreement between them, and the payment of $1,000 by Sher to Bines, as the initial payment under the contract between the company and Bines, was not part performance sufficient to take the case out of the statute of frauds, even if Sher had demanded a conveyance. *Linsky* v. *Exchange Trust Co.* 260 Mass. 15. *Collins* v. *Stanbon,* 254 Mass. 339. If Sher agreed with the company to advance funds to effect the purchase, Bines, who was not a party to that contract, could not require Sher to make the payments in accordance with his promise. *Central Supply Co.* v. *United States*

*Fidelity & Guaranty Co.* 273 Mass. 139. Nothing of value had passed from the company to Sher and even if the company was damaged by the failure of Sher to furnish funds to enable it to purchase, yet Bines, under the doctrine of *Evans, Coleman & Evans, Ltd.* v. *Pistorino,* 245 Mass. 94, upon which he relies, could not enforce the company's rights against Sher, because the sealed contract would bar Bines from holding Sher as a principal. *Seretto* v. *Schell,* 247 Mass. 173. Bines was willing to transact his business with a straw of little or doubtful financial worth, and the liability of the company to Bines cannot be shifted to Sher.

The granting of specific performance rests in the sound judicial discretion of the judge. While the judge found that Bines "was lacking in entire frankness in the matter in failing to tell Sher about the concession . . . made to the Duncan Company," yet he found that Bines was not guilty of fraud. *Phinney* v. *Friedman,* 224 Mass. 531, 533. *Windram Manuf. Co.* v. *Boston Blacking Co.* 239 Mass. 123, 126. We are aware of the general rule denying this form of relief to one whose conduct savors of fraud, *Brockton Olympia Realty Co.* v. *Lee,* 266 Mass. 550; *Florimond Realty Co. Inc.* v. *Waye,* 268 Mass. 475; *Shikes* v. *Gabelnick,* 273 Mass. 201, and although a review of the discretionary action of the judge as to both facts and law is open, *Long* v. *George,* 296 Mass. 574, 579, and cases cited, in the absence of any error of law or fact, we see no reason to revise his exercise of discretion. *Perry* v. *Shedd,* 159 Mass. 200. *Briggs* v. *Weston,* 294 Mass. 452, 454.

The final decree must be modified by striking out the third paragraph requiring Sher to furnish the company with funds sufficient to enable it to perform its contract of purchase; in all other respects it is affirmed with costs.

*Ordered accordingly.*